

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-2005

# In Re: Alghny Health

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1200

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Alghny Health " (2005). *2005 Decisions.* Paper 1454.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1454

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1200

IN RE:

ALLEGHENY HEALTH EDUCATION
AND RESEARCH FOUNDATION, et al.,

Debtors

RISK MANAGEMENT ALTERNATIVES, INC., successor
to United Creditors Alliance Corp.,

Appellant

v.

WILLIAM J. SCHARFFENBERGER, as Chapter 11 Trustee of
Allegheny Health, Education and Research Foundation

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

(Dist. Court No. 03-CV-0074)
District Court Judge: Terrence F. McVerry

Submitted pursuant to LAR 34.1(a)
January 18, 2005

Before: ALITO, McKEE, and SMITH, Circuit Judges.

(Opinion Filed: March 11, 2005)

## OPINION OF THE COURT

PER CURIAM:

Allegheny Health, Education and Research Foundation, Allegheny University of the Health Sciences, Allegheny University Medical Practices, Allegheny Hospitals, and Centennial and Allegheny University Hospitals-East (collectively, "the Debtors") filed a voluntary petition for bankruptcy relief under Chapter 11 on July 21, 1998. William J. Scharffenberger, the Chapter 11 Trustee ("the Trustee") of Allegheny Health, Education and Research Foundation, filed this action to avoid several transfers of money made to United Creditors Alliance Corporation ("United Creditors") under the theory that the transfers were "preferential" under 11 U.S.C. 547(b). The Trustee also sought to recover the transfers from United Creditors pursuant to 11 U.S.C. §550(a)(1). Risk Management Alternatives, Inc. is the listed defendant only because it is the successor-in-interest to United Creditors; for the sake of simplicity we will therefore refer to both entities as United Creditors.

On February 26, 2002, the Bankruptcy Court held a bench trial on all outstanding matters in the case. In a Memorandum Opinion and Order of the Court dated April 17, 2003, the Bankruptcy Court held that five of the twelve payments, that is, those listed as Checks A, H, I, K and L on the table in the parties' stipulations, were recoverable by the Trustee from United Creditors pursuant to §550(a)(1). The Bankruptcy Court also denied

United Creditors' Motion for Reconsideration with prejudice.

United Creditors filed a Notice of Appeal with the Bankruptcy Court. On December 24, 2003, the District Court entered its Memorandum Opinion and Order affirming the Bankruptcy Court Opinion.

This appeal followed.

## I.

We exercise plenary review over the Bankruptcy Court's legal determinations and review the Bankruptcy Court's factual findings for clear error. Duke Energy Royal, LLC v. Pillowtex Corp. (In re: Pillowtex, Inc.), 349 F.3d 711, 716 (3d Cir. 2003). A finding of fact is clearly erroneous when it has no credible evidence to support it or when it has no rational relationship to the evidence. Kool, Mann, Coffe & Co. v. Coffey, 300 F.3d 340, 353 (3d Cir. 2002).

## II.

The Trustee's short delay in amending its complaint did not prejudice United Creditors. United Creditors was informed of the Trustee's intent to pursue the additional payments within two weeks after the Trustee first learned of them; the Trustee moved to amend before the Bankruptcy Court had decided United Creditors' summary judgment motion; and United Creditors itself acknowledged the existence of Checks K and L in its Motion for Summary Judgment.

## III.

The critical issue in this appeal is whether United Creditors was required to introduce evidence that the disputed payments were not unusual by the relevant standard of the industry. We find that United Creditors was so required and thus will affirm the Bankruptcy Court's Opinion.

United Creditors argues that Checks A, H, I, K and L were all subject to the "ordinary course of business" exception contained in 11 U.S.C. § 547(c)(2):

> (c) The trustee may not avoid under this section a transfer –
> (2) to the extent that such transfer was –
>> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>> (C) made according to ordinary business terms[.]

The Trustee admits that it cannot escape subsections (c)(2)(A) and (c)(2)(B), as the transfers were in payment of a debt incurred by the Debtors in the ordinary course of both the Debtors' and United Creditors's businesses, and the transfers were made and received in the ordinary course of the respective businesses. However, the Trustee argues that United Creditors has no affirmative defense because it cannot satisfy the third condition of the statute: the transfers were not "made according to ordinary business terms." 11 U.S.C. §547(c)(2)(C).

United Creditors counters that the transfers were, in fact, made according to ordinary business terms because the transfers were ordinary in the context of its pre-

preference period relationship with the Debtors, and that the pre-preference period relationship was long enough to make industry standard evidence unnecessary. United Creditors bases its argument upon this Court's opinion in Fiber Lite Corp. v. Molded Acoustical Products, Inc. (In re Molded Acoustical Products, Inc.), 18 F.3d 217 (3d Cir. 1994), which, United Creditors contends, abrogates the need for Section 547(c)(2)(C) proof beyond the parties' payment history where the parties have had a long-standing and consistent relationship. In fact, Molded Acoustical does no such thing.

Under Molded Acoustical, a creditor has no affirmative defense to a Section 547(b) avoidance action unless the creditor proves that the preferential transfers in question were made "in harmony with the range of terms prevailing as some relevant industry's norms." 18 F.3d at 226. When a creditor and a debtor have had "an enduring, steady relationship," meaning that the terms of the relationship did not change "significantly" during the pre-petition insolvency period, then the creditor will be able to depart "substantially" from the range of terms prevailing as the relevant industry's norms and still enjoy the protection of Subsection (C). Id. Moreover, "[the longer] the pre-insolvency relationship between the debtor and the creditor, the more the creditor will be allowed to vary its credit terms from the industry norm yet remain within the safe harbor of §547(c)(2)." Id. at 225. But while a creditor may, under the right circumstances, depart substantially from the relevant industry's norm for credit terms, it is possible for even longstanding credit terms to "depart so grossly from what has been established as the

pertinent industry's norms that they cannot be seriously considered usual and equitable with respect to other creditors." Id. at 226. In other words, "even when the debtor/creditor relationship has been well-settled prior to the debtor's insolvency," the relevant industry's norm can never be wholly abandoned. Id.

The question of what constitutes the relevant "ordinary business terms" in a particular debtor/creditor relationship is peculiarly factual. There is no rigid rule applicable across all industries, or even across one industry in particular, as to how much credit terms in a relationship may vary from an industry's norms after the relationship has existed for a given unit of time. Here, United Creditors could not prevail under §547(c)(2)(C) without presenting any evidence regarding the relevant industry's norm given the Bankruptcy Court's credible factual findings that (1) the number of days to pay varied dramatically throughout the Debtors' relationship with United Creditors, (2) the relevant payment history was only ten months of a two-year relationship, and (3) the business terms United Creditors describes as "ordinary" depart grossly from the standard time to pay in the relevant industry.

After considering all of the arguments raised on appeal, we therefore affirm the Order of the District Court.