375 B.R. 129 (2007)
In re JUST FOR FEET, INC., et al., Debtors.
Charles R. Goldstein, Chapter 7 Trustee, Plaintiff,
v.
Hickory Brands, Inc., Defendant.
Charles R. Goldstein, Chapter 7 Trustee, Plaintiff,
v.
Spectrum Sports, a Division of Hickory Brands, Inc., Defendant.
Bankruptcy No. 99-4110 (JKF), Adversary Nos. 01-8359, 01-8160.
United States Bankruptcy Court, D. Delaware.
September 12, 2007.
*130 Thomas G. MacAuley, Elizabeth D. Power, and Martin T. Fletcher, Baltimore, MD, for Trustee, Charles R. Goldstein.
Jeffrey C. Wisler, Wilmington, DE, for Hickory Brands, Inc., and Spectrum Sports, a Division of Hickory Brands, Inc.

MEMORANDUM OPINION[1]
JUDITH K. FITZGERALD, Bankruptcy Judge.
Before the court are cross motions for summary judgment in two adversary proceedings *131 regarding avoidance and recovery of preferential payments.[2]
Spectrum Sports, the defendant in Adv. 01-8160, is a division of Hickory Brands, Inc., the defendant in Adv. 01-8359. See Trustee's Supplemental Memorandum in Support of. Motion for Summary Judgment, Adv. 01-8160 at Dkt. No. 61, at 12.
During the period January 1997 to August 1999, Hickory Brands entered into a series of transactions with Debtors in which Hickory Brands manufactured and sold footwear accessories to Debtors.[3] Precisely when Debtors began doing business with Spectrum Sports is not clear from the record, but data regarding Spectrum Sports begins only in 1999.
Debtors filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code on. November 4, 1999. The court ordered lie Debtors' cases to be jointly administered. The Debtors' cases were converted from Chapter 11 to Chapter 7 of the Bankruptcy Code on March 21, 2000.
The Chapter 7 Trustee filed suit against Hickory Brands on November 2, 2001, to recover alleged preferential payments in the amount of $748,038.47[4] and against Spectrum Sports on October 31, 2001, to recover alleged preferential payments in the amount of $1,233,196.59 pursuant to 11 U.S.C. § 547(b) and § 550. Hickory Brands and Spectrum Sports asserted affirmative, defenses under § 547(c). The Trustee filed his motion for summary judgment with respect to Hickory Brands on June 24, 2005, Adv. 01-8359 at Dkt. No. 50, and with respect to Spectrum Sports at Adv. 01-8160 at Dkt. No. 49. Hickory Brands, jointly with Spectrum Sports, the . defendant in Adv. 01-8160, filed its motion for summary judgment on the same date. See Hickory Brands, Adv. No. 01-8359 at Dkt. No. 52; Spectrum Sports, Adv. 01-8160 at Dkt. No. 50. Because for the most part the same documents were filed in each adversary, references to docket numbers herein will be to those in the Hickory Brands adversary, Adv. 01-8359, unless specifically stated otherwise.
The court may grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. A.W. v. Jersey City Public Schools, 486 F.3d 791, 794 (3d Cir.2007). The parties agree that the transactions satisfy the requirements of § 547(b). Thus, they assert that the only issues before the court in both adversaries are whether the transfers at issue are unavoidable because they were in the ordinary course or because the new value exception of § 547 applies. As to *132 the ordinary course defense, although the payment history information provided by the parties cannot be reconciled, we nonetheless will grant summary judgment in favor of the Trustee because, as will be explained below, defendants have not established the elements of § 547(c)(2)(C)(ordinary business terms). As to the new value defense of § 547(c)(4), the inconsistencies in the evidence are so material that neither party can be awarded summary judgment. The Court will schedule another status conference regarding determination of the new value credit.
Regarding Hickory Brands
The evidence provided by the parties is inconsistent and establishes that there are material facts in dispute. For example, the Trustee uses "age at pay date" with respect to payment of invoices while Hickory Brands uses "days past terms." The court cannot reconcile the disparate number of days for the hundreds of invoices listed by the parties. Although Hickory Brands provided information with respect to invoices dated as far back as January 6, 1997, the Trustee provided information beginning February 2, 1998. This discrepancy is not in and of itself unresolvable but the Trustee's recitation of the number of days payments were late is not even in the same ball park as Hickory Brands' recitation, as illustrated by this summary chart:

Trustee's Data Hickory Brands? Data
 1998 1998
January 3 to 5 days late 16 to 25 days late
February 3 to 5 days late either 2 or 98 days late
March 80 to 90 days late on time, within a week or between 94 and over
 100 days late
April 2 to 145 days late beginning of month: 74 to 145 days late; mid to
 end of month: 2 to 4 days late with several over
 30 days late and several credits
May 5 to 101 days, 1 to 106 days late, most within 5 to 8 days late
 most within 8 to
 10 days late
June 10 to 86 days late beginning of month payments between 10 and 45
 with payments in days late; in the latter part of the month the
 the beginning of range was 3 to 300 days but most paid within
 the month between one week past term
 20 and 25
 days late
July just a few days 1 to 2 weeks late
 late and many on
 time
August similar information similar information as provided by Trustee
 as provided
 by Hickory
 Brands
September no late payments most within 1 or 2 weeks late, some not paid
October 34 to 57 days late many not paid; others paid within approximately
 2 weeks past term
November 5 to 19 days late most within 1 to 2 weeks late
December most within 45 to most payments on time
 87 days late
 1999 1999
January 30 to 60 days late 16 to 25 days late
*133
February 9 to 106 days late; over 100 days late in the beginning of the month;
 first part of month in the second half of the month between 1 and 4
 103 to 118 days days late until the end of the month were payments
 late; most within were over 90 days past term
 9 days
March and April most between 30 most between 30 and 40 days past term
 and 33
May most between 21 between 4 and 60 days late, in early to mid-month
 and 25 days late most between 14 and 28 days late with
 number of days decreasing as month went on;
 from the third week of the month the payments
 were either 4 days past term or 50 days for the
 most part
June no payments most between 30 and 40 days late
July range is 48 to 75 most around 30 days but the range is 30 to 54
 days late but most days late
 in the 49 to 53 day
 range
August 42 to 60 days past, range of 3 to 46 days with most between 20 and
 most in the 40 to 25 days past term
 50 days late range
September most in the 40 to most in the 10 to 20 days past term range
 50 day past term
 range
October to November no payments no information provided after September

Further, the parties do not always list the same invoice numbers, check amounts, payment dates, etc. Thus, although there may be a way to reconcile this data, the Court has been unable to accomplish that goal on the state of this record.
Regarding Spectrum Sports
In the adversary filed against Spectrum Sports, similar problems exist. To note just one, the Trustee lists Invoice No. 170816 dated 4/29/99. Adv. No. 01-8160, Doc. No. 51 at Exh. 2. Spectrum's evidence, which we note in large part is captioned "Hickory Brands," does not list an invoice numbered 170816 for 4/29/99.
Regarding Both Adversary Actions
These are just a few of many examples of the state of the evidence in these adversaries and, despite two law clerks and the undersigned collectively having spent hundreds of hours trying to piece together the evidence, the task has proved impossible and the effort has been a lost cause and one the court will not repeat.
One thing is clear from the evidence: proof required by § 547(c)(2) not has been met in either adversary by either defendant. At the time this adversary was filed, that section provided:
(c) The trustee may not avoid under this section a transfer . . . (2) to the extent that such transfer was . . . (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms. . . . [5]
11 U.S.C. § 547(c)(emphasis added).
Assuming, without deciding, that § 547(c)(2)(B) has been met, the element of ordinary business terms under *134 § 547(c)(2)(C) in the industry has not been established. The Court of Appeals for the Third Circuit followed the. Seventh Circuit's analysis in this regard and defined ordinary business terms as "range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection (C)." In re Molded Acoustical Products, Inc., 18 F.3d 217, 220 (3rd Cir.1994), quoting In re Tolona Pizza Products Corp., 3 F.3d 1029, 1033 (7th Cir.1993)(emphasis in original). However,
even when the debtor/creditor relationship has been well-settled prior to the debtor's insolvency, should the creditor be unable to fit its terms within the sliding-scale window surrounding the established industry's norm, the preferential transfer will not be deemed unavoidable by virtue of § 547(c)(2), although the terms of § 547(c)(2)(A) & (B) are fulfilled. That is to say, the parties' longstanding credit terms, although consistent as between them, may depart so grossly from `what has been established as the pertinent industry's norms that they cannot be seriously considered usual and equitable with respect to the other creditors.
Molded Acoustical Products Inc., 18 F.3d at 226. Therefore, the defendants in these adversaries are required to introduce some evidence of the payment standards in the industry beyond the parties' payment history, even where there is a long-standing relationship, in order to meet the element of the (c)(2) defense. Risk Management Alternatives v. Scharffenberger (In re Allegheny Health Educ. And Research Foundation), 127 Fed.Appx. 27, 29-30, 2005 WL 565151 (3d Cir.2005).
In this case the only evidence offered by defendants regarding industry standards is an affidavit by Nissan Joseph, President of Hickory Brands. See Adv. No. 01-8359 at Doc. No. 53; Adv. No. 01-8160 at Doc. No. 52. The affidavit states that Hickory Brands' business is the manufacturing and shipping of footwear accessories and that Mr. Joseph has been involved in the Shoe Care Manufacturing and Retailing industry for 17 years. He states that he is familiar with the standard billing practices of the industry and that the billing practices between the Debtors and defendants are consistent with the standard billing practices of the industry. Nothing in the affidavit states what those practices are and nothing attempts, to match the unspecified practices, in the industry with the likewise unspecified practices of the defendants. The affidavit is insufficient to establish industry standards under the case law.
Because the defendants failed to establish the defense of ordinary business terms, summary judgment will be granted to the Trustee on that basis. However, the issue of new value remains and therefore we will schedule a final pretrial conference[6] for the November, 2007, omnibus *135 hearings in Wilmington, Delaware, and a trial for January, 2008, in Pittsburgh, Pennsylvania. If the parties file a motion to approve a settlement by November 13, 2007, the November 26, 2007, hearing date will be used as a hearing on the settlement and to determine whether trial must still go forward. If no settlement motion is timely filed, the trial will go forward.
An appropriate order will be entered.

ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT
AND NOW, this 12th day of September, 2007, it is ORDERED, ADJUDGED AND DECREED that the Trustee's motion for summary judgment is granted in part with respect to the defendants' ordinary course defense and defendants' motions for summary judgment are denied in part with respect to the ordinary course defense.
It is FURTHER ORDERED that a final pretrial conference is set for November 26, 2007, at 8:30 a.m. regarding the new value defenses in the Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware.
It is FURTHER ORDERED that a trial with respect to the new value defenses will be held on January 7, 2008, beginning at 9:00 a.m. in Courtroom A, 54th Floor, U.S. Steel Tower, 600 Grant Street, in Pittsburgh, Pennsylvania.
It is FURTHER ORDERED that if a motion to settle is filed on or before November 13, 2007, the November 26, 2007, hearing will address the motion to settle and a determination with respect to whether a trial is necessary will be made.
It is FURTHER ORDERED that counsel for the Trustee shall immediately serve a copy of this Order on all parties in interest in both adversary cases and shall file a certificate of service forthwith.
NOTES
[1] The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings' of fact and conclusions of law.
[2] These matters have been pending for some time inasmuch as, at a hearing on October 12, 2005, it was represented to the court that the matters had been settled and at that time the court ordered that motions to approve settlement be filed on or before November 1, 2005. As of July, 2006, no such motions had been filed so the court entered an order requiring the filing of a status report. The status report was filed on August 2, 2006, wherein the Trustee stated that the parties had not been able to settle. The court thereafter ordered that a completion of briefing be filed after which the matter would be taken under advisement.
[3] "Based on Hickory Brands' evidence, we could conclude that Debtors and Hickory Brands began doing business in 1997 but the record does not specifically provide that information so the duration of the parties' relationship is not established. The court agreed to accept invoices from and after 1997.
[4] The amount asserted as paid in the preference period in the affidavit of Nissan Joseph, President of Hickory Brands, is $865,073.27. Adv. No. 01-8359 at Doc. No. 53; Adv. No. 01-8160 at Doc. No. 52.
[5] In 2005 BAPCPA changed this section to provide in the alternative. The pre-2005 version, of § 547(c)(2) applies to this case.
[6] Regarding the pretrial conference, the court notes that the Trustee and the defendants have approached the calculation of new value in similar fashion, but the mathematical results are not in agreement. The court accepts their approach. However, again, the court cannot reconcile the math. Thus, the first issue to be addressed is where in the mass of documents submitted the calculations deviate and what witnesses will be called to clarify the evidence if the parties are unable to settle their differences.

The Trustee and Hickory Brands have determined Hickory Brands' liability to be either $518,696.21 or $507,933.87 respectively. This difference of $10,762.34 suggests that another effort to settle may be worthwhile. The Court cannot state with certainty, based on this record, what the position of the parties is regarding Spectrum. Sports' liability, if any.